UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN LeBLANC AND<br>ANDREA LeBLANC | CIVIL ACTION |
| VERSUS | NO. 98-2081 c/w 97-0971 |
| TRANS UNION, LLC | SECTION: "C" (2) |

**ORDER AND REASONS**

Before the Court is a Motion to re-open the case, filed by the plaintiffs, Steven LeBlanc and Andrea LeBlanc ("Plaintiffs"), to: (1) enforce the March 10, 1999 consent order; (2) impose sanctions and levy fees and expenses against the defendant; and (3) order additional discovery (Rec. Doc. 303). The defendant, Trans Union, LLC ("Trans Union") opposes the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law, the Court finds that the motion is **GRANTED IN PART, AND DENIED IN PART**.

**I. BACKGROUND**

In 1998, this Court certified a class action against Trans Union under the Fair Credit Reporting Act ("FCRA") (Rec. Doc. 47). A primary issue in the case was the scope of Trans

1

Union's duty to obtain certifications of use from its insurance company customers under the FCRA. The FCRA mandates that agencies like Trans Union act as information gate-keepers. The statute requires Trans Union's insurance industry customers to "certify the purpose for which the information is sought, and certify that the information will be used for no other purpose" before Trans Union is allowed to release credit information to them. 15 U.S.C. § 1681e(a). In the complaint, the Plaintiffs argued that Trans Union violated 15 U.S.C. § 1681e by failing to obtain "separate and individual" certifications of permissible purposes from insurers prior to the release of consumer credit data. Complaint, ¶ 6. Initially, Trans Union moved to dismiss the complaint pursuant to Rule 12(b)(6) and 12(b)(1). However, before this Court ruled on the motion to dismiss, the parties reached an agreement to settle the Plaintiffs' claims. And, on March 10, 1999, a "Consent Order" was entered upon the record (Rec. Doc. 159).

The Consent Order mandated changes to Trans Union's business practices regarding the release of information to insurers. Specifically, the Consent Order required Trans Union to obtain individual certifications from insurers, detailing the Permissible Purpose for which the data was to be released, prior to furnishing the insurers with consumer credit reports. Additionally, Trans Union was required to display the Permissible Purpose under which it released information to insurers on disclosures of credit information to individual consumers.[1]

---

[1] The text of the pertinent provisions of the Consent Order read as follows:

5. Trans Union, within 180 days of the date of this Order, shall require its Insurance Company Subscribers to individually identify the Permissible Purpose for which a requested Consumer Report is sought along with each request for a Consumer Report ("Individual Certification"), and if Individual Certification does not accompany a request by the Insurance Company Subscriber for a Consumer Report, Trans Union shall not furnish the Consumer Report.

6. In the event that Trans Union provides Consumer Reports to a Reseller or Affiliate for

In their motion to re-open, the Plaintiffs allege that Trans Union has violated the Consent Order by failing to require insurers to individually certify Permissible Purposes before releasing credit data. Additionally, the Plaintiffs assert that Trans Union has disclosed consumer credit reports to individuals without displaying Permissible Purposes. In their motion to re-open, the Plaintiffs rely on several exhibits to illustrate Trans Union's transgressions of the Consent Order. The first exhibit is a consumer credit report that was allegedly provided by Trans Union to an insurer for an impermissible purpose: claim investigation. The Plaintiffs also claim that Trans Union has violated the Consent Order because the released report does not display the purpose for which it was disclosed. The Plaintiffs' second exhibit is a Trans Union credit report furnished to an individual consumer over the internet. With respect to this exhibit, the Plaintiffs assert that the Consent Order has been violated because the Permissible Purpose for which Trans Union released information to insurance companies is not listed on the report. In a supplemental memorandum to support the motion to re-open, the Plaintiffs submitted additional exhibits displaying a credit reports obtained from the internet. One of the exhibits is dated November 24, 2007, the other is dated November 26, 2007. The Plaintiffs argue that these reports illustrate Trans Union's continuing violation of the Consent Order.

---

resale to an Insurance Company Subscriber, Trans Union, within 180 days of the date of this Order, shall require the Reseller to obtain from the Insurance Company Subscriber the Individual Certification described in Paragraph 5.

7. Within 180 days of the date of this Order, Trans Union shall, in connection with furnishing a Consumer Report to the Consumer to whom it relates, identify the Permissible Purpose certified by an Insurance Company Subscriber, if any, which sought and obtained from Trans Union the Consumer's Report within two (2) years of the date of a Consumer Report furnished to Insurance Company Subscribers after 180 days from the date of this Order.

In addition, the Plaintiffs request relief in the form of sanctions: $2,500 for each consumer report furnished to an insurer in violation of the Consent Order, as well as $2,500 for each consumer report released to a consumer without the required identification of a Permissible Purpose. Moreover, the Plaintiffs request that the Court levy Trans Union with the fees and costs the Plaintiffs have incurred to investigate the alleged violations. Finally, the Plaintiffs request that the Court order Trans Union to respond to discovery requests.

In opposition, Trans Union claims that the first exhibit, a consumer credit report that was used by an insurance company in a lawsuit to support a motion for summary judgment, does not illustrate a violation of the Consent Order because the information was released for a Permissible Purpose. Trans Union asserts that the insurer obtained the consumer credit report pursuant to the insured's written consent, and thus, there was no violation of the Consent Order. Trans Union also notes that the FCRA permits the release of information when written authorization is obtained.[2] Furthermore, Trans Union avers that the Plaintiffs' first exhibit does not illustrate a violation of the Consent Order for failure to identify the Permissible Purpose because the report

---

[2] Section 1681b of the FCRA states:

(a) In general

Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

>  (1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.

>  (2) In accordance with the written instructions of the consumer to whom it relates.

15 U.S.C. § 1681b.

was not released to a consumer, but an insurer. Trans Union argues that the Permissible Purpose need not be displayed when it releases information to insurers because the Consent Order only requires the Permissible Purpose be displayed when credit information is released to consumers.

In response to the Plaintiffs' second exhibit, a credit report furnished to a consumer over the internet, Trans Union concedes that the Permissible Purposes are not identified. Yet, Trans Union asserts that the Court should not hold the defendant in contempt for violating the Consent Order because Trans Union has already remedied the computer error which caused the Permissible Purpose to be omitted from consumer credit reports. Trans Union claims that communication errors between itself and its internet portal manager, a wholly owned subsidiary, allowed consumers to obtain credit reports over the internet without the Permissible Purpose listed. Trans Union avers that it has worked with its internet manager to discover and correct the underlying programming errors, so that the Permissible Purpose information is now displayed on consumer credit reports.

Regarding the November 24th and 26th credit reports obtained via the internet, Trans Union avers that the exhibits do not illustrate violations of the Consent Order. Indeed, Trans Union argues that the November 26th exhibit is not subject to the Consent Order because the report is a "3-in-1" and was furnished by an entity other than Trans Union. Finally, Trans Union argues that its substantial compliance with the Court's Consent Order should militate against a finding of contempt.

**II. LEGAL STANDARDS**

"A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature." *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 378 (1992). Yet, it is an agreement that is enforceable as a judicial decree, and thus, subject to the rules generally applicable to other judgments. *Id.* The Fifth Circuit notes that "[t]he entry of a consent decree does not 'kill' a case or terminate the district court's jurisdiction." *Alberti v. Klevenhagen*, 46 F.3d 1347, 1365 (5th Cir. 1995) (citing *In re Pearson*, 990 F.2d 653, 657 (1st Cir.1993)). Indeed, when a consent decree has ongoing effects, the issuing court retains authority to enforce the terms of the agreement. *See Id.* Furthermore, "[a] consent order, while founded on the agreement of the parties, is nevertheless a judicial act, enforceable by sanctions including a citation for contempt." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987) (citing *United States v. City of Miami*, 664 F.2d 435, 439-40 (Former 5th Cir. Dec. 1981) (*en banc*).

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999) (citing *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir.1995)). "In a civil contempt proceeding, the party seeking an order of contempt need only establish by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order."*Id.* at 382-83 (citing *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir.1995); *Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir.1992)). Yet, the Fifth Circuit notes, "[t]he civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court."*Whitfield*, 832 F.2d at 913. Finally, once a violation is

demonstrated, the burden falls on the contemnors to show "either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order." *Id.* at 914 (citing *Louisiana Educ. Ass'n v. Richland Parish School Bd.*, 421 F.Supp. 973, 977 (W.D.La. 1976), *aff'd* 585 F.2d 518 (5th Cir. 1977); *see United States Steel Corp. v. United Mine Workers of America, Dist*. 20, 598 F.2d 363, 368 (5th Cir. 1979)).

### III. ANALYSIS

The Court finds that the Plaintiffs have not met their burden to invoke the Court's contempt powers. The Plaintiffs have not shown by clear and convincing evidence that the initial exhibit, a report provided to an insurer, was furnished in violation of the Consent Order. The Plaintiffs assert that the credit record was obtained by the insurer for the "impermissible purpose of claim investigation." Rec. Doc. 303, p. 6. However, Trans Union notes that the credit record was obtained by the insurer with the express written permission of the consumer; and, that furnishing information with the consent of the consumer is a Permissible Purpose. Rec. Doc. 314, p. 10. Next, the Plaintiffs argue that Trans Union "***does not anywhere show*** that it obtained any certification of permissible purpose from the insurer" before releasing the information. Rec. Doc. 316, p. 5. However, it is the Plaintiffs' burden to show that Trans Union failed to comply with the Consent Order to invoke the Court's contempt powers. *Piggly Wiggly Clarksville, Inc.,* 177 F.3d at 383. Thus, the Plaintiffs have mistakenly placed the burden on Trans Union to disprove a violation, when the case law mandates that the Plaintiffs bear the burden to prove a violation.

Additionally, the Plaintiffs claim that even with the insured's written consent to access his credit information, the data was released after the consent had expired. Rec. Doc. 316, p. 5. The Court does not find sufficient evidence to support the Plaintiffs' claim. The record contains an "Authorization for Release of Credit Information" signed by the insured on September 18, 2002; and, the Release authorized the disclosure of information between August 31, 2000 and September 1, 2002. Rec. Doc. 318, Exhibit 1. After examining the challenged credit report, Rec. Doc. 303, Exhibit 3, the Court does not find clear and convincing evidence that the report was released after the consumer's consent expired. It seems that the information was released on October 3, 2002, which was approximately two (2) weeks after the insured's consent was obtained. Also, the Court does not find clear and convincing evidence that the information contains credit data outside the authorized time period. Again, it is the Plaintiffs' burden to establish violation of the Consent Order. *Piggly Wiggly Clarksville, Inc.,* 177 F.3d at 383. Yet, the Plaintiffs have not convincingly rebutted Trans Union's assertion that the credit information was released for a Permissible Purpose because the insured granted his consent for the disclosure. Thus, the Plaintiffs have not met their burden to show that Trans Union failed to comply with the Court's Order by furnishing a report without individual certification of a Permissible Purpose. Accordingly, the Plaintiffs are not entitled to enforce the Consent Order through the Court's contempt powers. *Id*. Furthermore, the Court finds that Trans Union was not required to identify the Permissible Purpose on the report furnished to the insurer because the Consent Order only mandates that Trans Union display the Permissible Purpose on reports furnished to consumers. Therefore, the Plaintiffs' claim that the first exhibit illustrates two (2) separate violations of the Consent Order is without merit.

The second exhibit, as Trans Union concedes, clearly illustrates a violation of the Consent Order. Indeed, the Court fails to understand why Trans Union's "QC/QA" process failed to include even one disclosure that contained an insurance inquiry. The Court finds that Trans Union's failure to properly test its web-based consumer interface to ensure compliance with the Consent Order bordered on recklessness. Thus, the burden falls on Trans Union to show mitigating circumstances or substantial compliance with the Consent Order to stay the Court's contempt power. *Whitfield* 832 F.2d at 913. The Court notes that the second exhibit is in violation of the Consent Order because Trans Union furnished a credit report to a consumer without displaying the Permissible Purposes for which the individual's credit data had previously been released to insurers. Trans Union has submitted the affidavits of Mitch Hoppenworth, Mark Marinko, and Sean Walker to demonstrate that Trans Union mistakenly released credit reports over the internet without displaying Permissible Purposes. The affidavits also assert that upon discovery of the error, Trans Union has worked to remedy the issue so that Permissible Purposes are identified on credit reports released over the internet. Yet, even by their own estimate, 1,678,278 credit reports were mistakenly released in violation of the Consent Order. Rec. Doc. 314, Affidavit of Mark Marinko, p. 6.

Next, Trans Union argues that the November 24th credit report that the Plaintiff's obtained over the internet is actually evidence that Trans Union has complied with the Consent Order. Specifically, Trans Union disputes the Plaintiff's assertion that the credit report incorrectly identifies the Permissible Purpose listed on the report. Trans Union notes that the heading "Account Review Inquiries" includes the permissible purposes of account review or other business transactions (i.e. insurance underwriting). Thus, Trans Union argues that the

correct permissible purpose was listed, even if the consumer did not have an account or policy with the insurer. Again, the Plaintiffs have not met their burden to establish a violation of the Consent Order. *Piggly Wiggly Clarksville, Inc.,* 177 F.3d at 383. With regard to the November 26th credit report, Trans Union's argument that the Consent Order does not reach disclosures made via Truecredit.com may be correct under the current Order; however, the parties shall address ways in which the Consent Order should be amended, as detailed below.

Thus, Trans Union has convinced the Court that it has substantially complied with the Consent Order. Accordingly, the Court's contempt powers are not needed to remedy Trans Union's violation of the Consent Order at this time. *See Whitfield*, 832 F.2d at 914. Additionally, the Court finds that the Plaintiffs' requests for sanctions and fees are inappropriate because civil contempt sanctions are intended to "force recalcitrant part[ies] to comply with a command of the court." *Id.* at 913. At this time, the Court is not convinced that Trans Union is a recalcitrant party.

In opposition to the Plaintiffs' request for additional discovery, Trans Union argues that if the Court finds no violation of the Consent Order, then no additional discovery should be allowed. Trans Union relies on a ruling from the Middle District of Florida for the proposition that additionally discovery should not be allowed based mere suspicion that an order has been violated. *800 Adept, Inc. v. Murex Sec. Ltd.*, 2007 WL 2826247 at *3 (September 25, 2007). Yet, that very opinion states, "there should be at least a *prima facie* showing by the aggrieved party of disobedience of the order" before a Court allows discovery. *Id.* at *2 (citing *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F.Supp.2d 228, 229 (D.Del. 2003). In this case, as Trans Union has conceded, the Plaintiffs' second exhibit identified a clear violation of the Consent Order. And

thus, there is a *prima facie* showing of disobedience. Accordingly, the Plaintiffs are entitled to additional discovery to determine whether Trans Union has implemented the needed policies and procedures to move Trans Union from a minimal showing of substantial compliance to a state that shows compliance with both the spirit and the letter of the Consent Order.

### IV. CONCLUSION

In light of the foregoing,

IT IS ORDERED that the plaintiffs' motion to re-open the case is **GRANTED IN PART, AND DENIED IN PART**. At this time, the Plaintiffs' requests for sanctions and fees are **DENIED**. However, the Plaintiffs' motion to re-open the case to conduct additional discovery is **GRANTED**.

IT IS FURTHER ORDERED that:

1. The Plaintiffs may submit interrogatories for the Court's review. Upon the Court's approval, the questions shall be submitted to Trans Union. The scope of discovery shall be limited to Trans Union's past and present efforts to comply with the Consent Order regarding credit report disclosures via the internet. Specifically, the Plaintiffs shall limit the extent of their investigation to the policies and procedures developed to ensure compliance with the Consent Order as Trans Union, and its subsidiaries, tested the new consumer interface. The interrogatories shall be filed thirty (30) days from the time this Order is docketed.

2. Both parties shall file memoranda discussing their positions regarding an amendment to the Consent Order. The amendment would require Trans Union to identify the Permissible Purposes on all credit reports furnished by Trans Union, and its subsidiaries and trademarks. The

parties shall also submit proposed language for the amendment, including appropriate definitions. The memoranda shall be filed sixty (60) days from the time this Order is docketed.

New Orleans, Louisiana, this 11th day of December, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE